UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | : | |
|---|---|---|
| ENTERGY NUCLEAR VERMONT YANKEE, LLC and ENTERGY NUCLEAR OPERATIONS, INC., | : : : : | |
| Plaintiffs, | : : | |
| v. | : : | Docket No. 1:11-cv-99 (jgm) |
| PETER SHUMLIN, in his official capacity as GOVERNOR OF THE STATE OF VERMONT; WILLIAM SORRELL, in his official capacity as the ATTORNEY GENERAL OF THE STATE OF VERMONT; and JAMES VOLZ, JOHN BURKE and DAVID COEN, in their official capacities as MEMBERS of THE VERMONT PUBLIC SERVICE BOARD, | : : : : : : : : : : | |
| Defendants. | : : | |

MEMORANDUM AND ORDER ON
PLAINTIFFS' EXPEDITED MOTION FOR AN INJUNCTION
(Doc. 213)

Plaintiffs Entergy Nuclear Vermont Yankee, LLC and Entergy Nuclear Operations, Inc. (collectively, "Plaintiffs") have filed an expedited motion for an injunction requiring New England Coalition, Inc. ("NEC") to withdraw a complaint -- filed in the Vermont Supreme Court -- seeking immediate shutdown of the Vermont Yankee Nuclear Power Station (Doc. 213) under Federal Rule of Civil Procedure 65(d)(2)(C) and 28 U.S.C. §§ 1651 and 2283.[1]  NEC opposed the motion (Doc. 215) and Entergy replied (Doc. 216).  Defendants also opposed the motion (Doc. 218) and Entergy replied (Doc. 221).

---

[1] The Court assumes general familiarity with the facts and procedural background of the case.  See Doc. 181.

1

In a January 19, 2012 Decision and Order on the Merits of Plaintiffs' Complaint ("Merits Decision"), this Court held Plaintiffs would be "irreparably harmed by Vermont Yankee's closure under preempted laws if Defendants enforced Act 160, or the preempted provision in Act 74, or if Defendants conditioned approval of a petition for continued operation on the existence of a below-market power purchase agreement with Vermont utilities." Merits Decision (Doc. 181) at 100. Accordingly, the Court, inter alia, permanently enjoined Defendants "from enforcing Act 160 by bringing an enforcement action, or taking other action, to compel Vermont Yankee to shut down after March 21, 2012 because it failed to obtain legislative approval (under the provisions of Act 160) for a Certificate of Public Good for continued operation." Id.

On February 27, 2012, Entergy filed a Notice of Cross-Appeal to the United States Court of Appeals for the Second Circuit (Doc. 189), appealing this Court's final judgment.

On March 19, 2012, this Court issued a further injunction, pending the appeal of the Court's final judgment, prohibiting Defendants "from bringing an enforcement action, or taking other action, to enforce [Vt. Stat. Ann. tit. 10] subsection 6522(c)(2) to compel Vermont Yankee to shut down because the 'cumulative total amount of spent fuel stored at Vermont Yankee' exceeds 'the amount derived from the operation of the facility up to, but not beyond, March 21, 2012.'" (Doc. 209 at 5.) The Court declined to consider Entergy's request for an injunction pending appeal barring the enforcement of Vermont Statutes Annotated, title 10, subsection 6522(c)(5) -- which Entergy was concerned would be construed to override Vermont Statutes Annotated, title 3, section 814(b) -- given the Vermont Attorney General's representation that

2

"Entergy may continue to operate under the terms of its current CPGs while its CPG petition remains pending at the [Public Service] Board."  See Doc. 209 at 4-5; Doc. 202 at 11.

On December 4, 2012, New England Coalition filed a complaint in the Vermont Supreme Court, see Doc. 214-4, invoking section 15 of title 30 of the Vermont Statutes, which provides "[a] party to an order or decree of the public service board . . . may complain to the supreme court for relief against any disobedience of or noncompliance with such order or decree." Vt. Stat. Ann. tit. 30, § 15.  In its state court complaint, NEC alleges Entergy is in noncompliance with the terms and conditions of the 2002 Public Service Board Order approving the sale of Vermont Yankee; specifically, a condition stating "[a]bsent issuance of a new [CPG] or renewal of the [CPG] issued today, [Plaintiffs] are prohibited from operating the Vermont Yankee Nuclear Power Station after March 21, 2012."  (Doc. 214-4 at 1, 5.)  NEC requests the Vermont Supreme Court enjoin continued operation until the Board has decided Entergy's current CPG petition.  Id. at 1, 8.

Here, Plaintiffs argue NEC should not be allowed an "end-run" around either the "agreement" Vermont Yankee cannot be shut down during the interim period or this Court's judgment which enjoins Defendants from taking action to shut down Vermont Yankee for failure to obtain legislative approval for a CPG for continued operation.  (Doc. 214 at 6.)  Entergy asserts nonparty NEC is within the reach of this Court's authority because NEC is "in active concert or participation with" Defendants and had "actual notice" of the injunction. Id. at 6-7.

In general, a court may not issue an order against a nonparty. United States v. Regan, 858 F.2d 115, 120 (2d Cir. 1988); see also Alemite Mfg. Corp. v. Staff, 42 F.2d 832, 832 (2d Cir. 1932 ("[N]o court can make a decree which will bind any one but a party . . . [and] it cannot

3

lawfully enjoin the world at large."). Rule 65(d)(2) provides an "order [granting an injunction] binds only the following who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)." Fed. R. Civ. P. 65(d)(2). The rule "is designed to codify the common-law doctrine that defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding." Heyman v. Kline, 444 F.2d 65, 66 (2d Cir. 1971) (citation and internal quotation marks omitted). Such "aiders and abettors" include "those identified with them in interest, in 'privity' with them, represented by them or subject to their control." Regal Knitwear Co. v. NLRB, 324 U.S. 9, 14 (1945).

NEC, a Vermont not-for-profit corporation whose "mission is to 'investigate the safety, suitability, and environmental effects of nuclear power plants; and to participate in government hearings and inform the public and government agencies of the hazards and risks of nuclear power,'" (Doc. 21-1 at 3, 7), is not a party to this action. NEC had sought, and Plaintiffs opposed, intervention in this action. (Docs. 21, 26.) The Court denied NEC's motion and NEC moved for reconsideration noting the misapprehension that NEC's interests would be adequately protected by the State. (Docs. 33, 38.) Plaintiffs also opposed that motion. (Doc. 56 at 4.) NEC was granted leave to file an amicus curiae memorandum, see Dkt. Entry 52, but was denied intervention.

NEC will not be bound by the injunctions entered in this case under Rule 65(d). Plaintiffs have not sufficiently demonstrated NEC is acting "in active concert or participation with" any Defendant to "nullify a decree" of this Court. In fact, the state, through the Vermont

4

Department of Public Service, has opposed the relief requested by NEC in the Vermont Supreme Court.  See Doc. 215-3.  NEC is not a state agency, is not represented by the state, and is not subject to the state's control -- as demonstrated by the state's opposition to its current course of action.  Compare Doctor's Assocs. Inc. v. Reinert & Duree, P.C., 191 F.3d 297, 304-305 (2d Cir. 1999) (finding franchisees (private actors) shared interests and use of the same attorneys as parties did not suffice to satisfy Rule 65(d)) with ACLU v. Johnson, 194 F.3d 1149, 1163 (10th Cir. 1999) (holding district court properly included district attorneys within grant of injunction prohibiting enforcement of a statute because an injunction against the governor and attorney general binds those attorneys under Rule 65(d)); Am. Libraries Ass'n v. Pataki, 969 F. Supp. 160, 163 (S.D.N.Y. 1997) (noting a preliminary injunction prohibiting enforcement of a statute would bind individual district attorneys as well as the attorney general under Rule 65(d)).  This Court refuses to exercise its discretion to bind NEC under Rule 65(d) to the injunctions issued in this case.  See Commercial Sec. Bank v. Walker Bank & Trust Co., 456 F.2d 1352, 1356 ("Rule 65 must be strictly complied with.  Great care must be used in the granting of . . . injunctive relief because of the extraordinary nature of that remedy."); Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008) (denial of injunctive relief reviewed for abuse of discretion).

       Plaintiffs also invoke 28 U.S.C. §§ 1651 and 2283 in support of their effort to require NEC to withdraw its complaint filed in the Vermont Supreme Court.  (Doc. 214 at 1, 6).  Section 1651, known as the all writs act, provides "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  Section 2283, known as the anti-injunction

act, provides "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.  Plaintiffs, however, have not asked this Court to grant an injunction staying a state court proceeding.  The Court declines to apply an exception to § 2283 where Plaintiffs have not specifically requested the extraordinary relief of an injunction to stay proceedings in a state court.  See Smith v. Bayer, 131 S. Ct. 2368, 2382 (2011) ("any doubts should be resolved in favor of permitting the state courts to proceed") (citation and internal quotation marks omitted).  The Court further declines to tap the authority of § 1651 to issue any writ against NEC.  Wis. Right to Life, Inc. v. Fed. Election Comm'n, 542 U.S. 1305, 1306 (Rehnquist, Circuit Justice 2004) (stating All Writs Act "is to be used sparingly and only in the most critical and exigent circumstances," and declining to issue injunction pending appeal) (citation and internal quotation marks omitted).

      In their second reply, Plaintiffs also request an injunction against Defendants.  (Doc. 221 at 6.)  They assert Defendants "are failing to stand by" their representation that "their position [is] that Vt. Stat. Ann. tit. 3, § 814(b) provides that a license subject to an agency's notice and hearing requirements does not expire until a final determination on the merits of an application for renewal has been made."  See Doc. 209 at 4; Doc. 221 at 6.  They request the Court "enjoin [Defendants] from enforcing any order to shut down the VY Station during the Interim Period."  (Doc. 221 at 6.)  As the Court previously noted, "[t]he Attorney General has represented to the Court [] that its position is that 'Entergy may continue to operate under the terms of its current CPGs while its CPG petition remains pending at the Board' and does not take

6

the position Vermont Yankee must close after March 21, 2012, while its petition for a renewed CPG remains pending before the Public Service Board." (Doc. 209 at 4-5 (quoting Doc. 202 at 11, 15)).)  In the absence of an order requiring the shut down of the plant, see Doc. 215-3 at 5, and  given the Attorney General's representation, the Court again declines to enter an injunction as broad as that now requested by Plaintiffs.

Plaintiffs' expedited motion for an injunction (Doc. 213) is DENIED.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 9th day of January, 2013.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge